Hawkins, J.,
delivered the opinion of the Court,
It appears from the record in this cause, that, prior to the 15th of September, 1848, the defendant, America S., and her sister Louisa Ann, daughters of the late Judge Cook, were the joint owners, in fee simple, of a house and lot in the town of Paris, Henry County, Tennessee. The said America S. had intermarried with one McFarland, who had died, leaving his wife surviving him, and the said Louisa Ann had intermarried with the defendant, Thomas C. Peace. On the 15th day of September, 1848, by deed of that date, said Peace, and wife sold and conveyed an undivided moiety in said lot to the defendant, America S., for the consideration of six hundred dollars. On the 10th day of November, 1848, the execution of said deed was duly acknowledged by the said Thomas C., before the Clerk of the County Court for said County, and on the same day the privy examination of the wife, touching the execution thereof, was regularly made, and its execution duly acknowledged by her before said Clerk, and thereupon said deed was duly registered in the office of the Register for said county.
At the time of the execution of the deed, the said Louisa Ann was an infant, and continued such until about the 13th of December, 1848, being a period of nearly three months after the execution of the deed. On the 27th day of October, 1851, she died, leaving her husband, Thomas C., and two children, to-wit: *445 tbe defendants, Emma and Eannie, one of whom was born before tbe date of tbe deed, surviving her. After she bad arrived at twenty-one years of age, she spoke of the sale to various persons, and upon every occasion expressed her entire satisfaction with tbe terms thereof. It further appears, the said Peace and wife continued to live in tbe vicinity of said lot for several years after tbe sale, and that at tbe date thereof, $600 was a full and fair price for said moiety in said property. After tbe purchase, tbe defendant, America S., removed from Paris to Wilson County, Tennessee, and on tbe 18th of December, 1852, she wrote a letter to one T. P. Jernigan, of Henry County, Tennessee, in which she requested him “to act as agent” for her in the transaction of her business in Paris, and after giving him some instructions touching other matters, she uses this language: “I authorize you to sell or rent my house and lot. If you sell it, do not take less than $1,400. If you rent it, get all you can in money, and no repairs. If the present occupants wish to get the house another year, let them know that I most respectfully decline.”
The lot before mentioned was the only one she owned or claimed in Paris. In pursuance of the authority conferred upon him by this letter, Jernigan, on the 26th day of March, 1853, sold said lots to defendants, Swinney and Smith, for the sum of $1,400, to be paid as follows, to-wit: $400 on the 25th of December, 1853; $400 on the 25th of December, 1854; $400 on the 25th of December, 1855, and $200 on *446 the 25th of December, 1856; for the payment of which he took their several promissory notes, and thereupon executed and delivered to them, in the name of, and as the agent of the said America S., a written agreement reciting the sale, binding her to make to the said Swinney and Smith, a good and valid title to said lot, upon the payment of the purchase money, the entire amount of which has been received by the said America S. On the 25th day of February, 1858, the said Swinney and Smith sold said house and lot to the complainant, Matherson, and by their written endorsement thereon for the value received, assigned, and delivered to him said written agreement. The different purchasers all took possession of said lot under their several purchases, and complainant Matherson is still in possession of the same. Matherson has demanded of Davis and Wife, (the said America S., having intermarried with defendant Davis,) a title -to said lot, in pursuance of the provisions of said written contract, which they have refused to make, and, therefore, he has filed this bill against Davis and Wife, Swinney and Staith, Thomas 0. Peace, and the infant children of the said Louisa Ann, to-wit: Emma and Fannie; and insists upon a specific execution of said contract of sale, between said America S., and Swin-ney- and Smith; and in the event that Davis and Wife cannot make him a good and valid title to the moiety purchased by the said America S., from said Peace and Wife, he is then entitled to a conveyance from Davis and Wife of the moiety of the said *447 America S., and to an account against them for the present value of the remaining moiety of said lots. Also to an account for valuable improvements.
The defendants, after admitting they cannot make title to one-half of the lot, insisted that the said Louisa Ann ratified and affirmed the deed of the 15th of September, 1848, after she became of age, and say they are willing to’ convey to complainant, Matherson, all the interest they have in said lot.
The infants, Emma and Fannie, answer by the guardian ad litem, and insist that their mother was an infant at the date of the execution of the deed, and therefore, they are entitled to one-half of said lot after the death of their father.
The defendant, Thomas C. Peace, answers, and insists, his [wife, Louisa Ann, fully ratified and affirmed said deed after she became of age, and that the complainant is protected against the claim of the infants by the Statute of limitations.
Davis and Wife have filed their cross bill in the cause, by which, in the event complainant, Matherson, recovers against them, they ask a recovery against Thomas L. Peace, upon his warranty of title in the deed to said America S.; and then several perplexing questions are presented to our consideration.
1. Has there been an affirmance of the deed executed by Mrs. Peace, during her minority, after she had attained twenty-one years of age? We think not. At the time of the execution of the deed, she was not only an infant, but was also under the disability of coverture, which continued up to the time of her *448 death, in 1851. At the common law, a conveyance by a feme covert, except by some matter of record, was absolutely void, and the only mode by which she could convey title to her real estate, was by fine and common recovery; but a different mode has been adopted by our Statute, and that is by the joint deed of the husband and wife, and the private examination of the wife touching the free and voluntary execution of the deed, by her; and the deed of a feme covert, executed and acknowledged in conformity with the provisions of that Statute, will be as effectual to pass her title to real estate, so far as it can be affected by her disability, as if she were a feme sole. In this case, the deed of Peace and wife was executed and acknowledged in the manner required by our Statutes, and, therefore, the effect of the disability of coverture, as to the mode of conveyance, is completely removed. But in the present case the disability of coverture not only existed at the time of the execution of the deed by the infant, but continued until her death; and, therefore, she was, during the whole time, incapable of performing any act of affirmance in any other manner than in the mode provided by Statute for the conveyance of the real estate belonging to femes covert; and, indeed, we think it may well be questioned whether, while under the coverture, even in that solemn manner, 'she could have affirmed the deed executed during her infancy. Had the vendor in this instance been a feme sole, we would have no hesitation in holding, upon the authority of several well considered adjudications of our own Court, that she had, by her acts and conver *449 sation, affirmed the deed, but- these authorites have no application to the question of affirmation by a feme covert.
2. Have the purchasers, by an actual adverse possession under the deed op Peace and Wife, acquised title to the undivided moiety of the lot in controversy, mentioned in said deed as against the infant defendants, Emma and Fannie, or are the infants, in consequence of such adverse possession, barred from recovering the same? We think not. It will be remembered, as has been already stated, at the time of the execution of the deed, at the time designated, Mrs. Peace was a feme covert, and continued under the disability of coverture up to the time of her death. At the date of the conveyance, the husband and wife were jointly seized of one-half the lot, and by virtue of the marital rights of the husband, he had a freehold estate therein. The disseizin was of the entire joint estate, to recover possession of which, they must have sued jointly. But the rule in such cases, is, that the Statute of limitations will begin to run against both husband and wife, from the time of the adverse entry; and if they fail to sue, their joint right of action will be barred by seven years’ adverse possession, so that if the wife should survive the husband, she must sue within three years next after the death of her husband, or be forever barred; or if he should survive her, her heirs, though under the disability of infancy, must sue within three years next after her death, or be forever barred — does not apply to this case. The *450 deed of Peace and Wife, was voidable ■ as to the wife, but not so as to the husband. He was thereby estopped from suing. There was no joint right of suit in the husband and wife, and the wife could not sue alone, during the life of her husband; hence, a different rule prevails. The Statute of limitations did not begin to run in the life time of the wife, as against her; and at her death, her rights to reality being, by the laws of descent, cast upon her children, who were, at that time, and still continue to be, infants; consequently, the Statute, not having commenced running in the life time of the mother, has had no operation as against them.
The deed of the husband was effectual to vest in the vendor, absolutely all the husband's estate in the land. At the date of the deed, he had an inchoate or imperfect estate, by the courtesy, in the lands of his wife, which became consummate or perfect on the death of the wife. This imperfect estate passed to the vendor by the deed, and upon the perfection of that estate by the death of the wife, it by virtue of the deed of the husband, inured to the benefit of Ms vendees; and thus the vendor became vested with an estate in the land, and entitled to the possession during the life of the husband. So that, for this reason, also, the Statute of limitations has formed no bar to a recovery by the heirs of the wife, and cannot begin to run against them, until the removal of disabilities and the limitation of the life estate; but this is not a question for determination. The deed by the husband and wife, was effectual to pass and *451 to vest in the vendee, a title in fee to one moiety of said lot; subject, however, to be avoided at the election of the wife, as to her interest, because of her infancy at the time of the execution of the deed. The title, however, does not become indefeasible, until the positive affirmance of the deed by the wife, after the disability of coverture is removed; or by her failure to elect, to affirm or disaffirm, within a' reasonable time after the removal of such disability; but what would or would not be a .reasonable time, is a question which must, in its very nature, for its solution, depend upon the existing circumstances. That which would be reasonable in one instance, might be wholly insufficient in another. Whether an infant may, during infancy, make an election, and disaffirm his deed of conveyance of his real estate, is a question which has been much mooted, and upon which the authorities are conflicting. Mr. Kent, vol. 2, 237, says the deeds of an infant may be avoided during infancy, “by his dissent, entry, suit or plea, as the case may require;” but the weight of judicial decisions in this country seems otherwise, and in the case of Scott vs. Buchanan, et al., 11 Hum., Totten Judge, in delivering the opinion of the Court, said: “The better opinion seems to be, that a sale of chattels by an infant, may be avoided during infancy, but that a sale of lands cannot be avoided by him till he becomes of age.”
It seems, however, to be well settled, that until the infant arrives at age, although he may not avoid his deed, he nevertheless, may enter, and take the profits *452 in the meantime; and in a case, 9 Cowan’s Rep., 626, it was holden, that being entitled to enter and take the profits, where the possession was changed, and he had no legal means to regain it, he might exercise the power of recision immediately. The infant, it is presumed, lacks discretion to exercise the power of .■avoidance; therefore the avoidance is allowed during infancy, only when it is necessary; hence, we consider that while the infant has the right to disapprove his deed, he may only exercise that right during infancy, wihen it becomes necessary to the enjoyment of rights, or manifestly to his interest that the same should be done before he arrives at age; and to this end, may, by a direct application for that purpose, invoke the aid of the protecting powers of a Court of Chancery, which is the peculiar guardian of the rights of infants, by which, in such cases, the deed of the infant may be conceded, and the infant placed in statu quo; and until this is done, the vendee in possession, under the deed of the infants, which is only voidable, may rightfully hold and enjoy the rents and profits of the land; but were there no seizure in fact, the infant might, without. the aid of a Court of • Chancery, so far avoid the deed, as to enter upon the land, and take the rents and profits, during his disability to affirm, the deed, and until the same shall have been done, or until a reasonable time for him to have done so has elapsed, after the removal of the disability.
During the life of the grantor, no one except the grantor, and after his death, none but his heirs, can call the title into question, on account of the infancy *453 of the grantor at the time of the execution of the deed. And after the death of the grantor, without having made the election, his heirs may do so, and thus affirm or disaffirm the deed; and their rights to make such election, may he exercised or waived in the same manner as by the grantor. If, after the removal of all disabilities, the infant fails to make his election within a reasonable time, the title to the vendee becomes indefeasible, not because of an adverse possession, and by virtue of the Statute of limitations, but because of the legal presumption that the infant has waived his right, to avoid the deed. Another important principle must be borne in mind, which is: “The privilege of infancy is to be used as a shield and not a sword.” He cannot have the benefit of the contract on one side, without returning the equivalent on the other.” And if he avoids an executed contract when he comes of age, on the grounds of infancy, he must restore the consideration which he received. But whether this rule would apply to the case now before the Court, upon the disaffirmance hy the heir, the consideration having been received by the ancestor, who covenanted to warrant the title, is a question we do not now determine.
3. Was the power under which Jernigan, the agent, acted in making the sale to Swinney and Smith, sufficient to authorize him to make a valid contract, binding his principal to make title to the purchasers, upon the payment of the purchase money?
We think it was. Since the case of Farris and *454 Hampton vs. Martin, 10 Hum., 495, this cannot he regarded as an open question; and, in this case, had the power been wanting or defective, the principal has fully ratified and affirmed the ,act of the agent, and cannot now he heard to insist, after having received the consideration money, with a full knowledge of the terms of the contract, that she is not hound thereby.
By the terms of 'that agreement, she became bound to convey to the purchasers, Swinney and Smith, a good and valid title to the whole of the lot, upon ■the payment of the purchase money; and that being done, upon her refusal to comply with that contract, she is liable to the purchasers, or their assignee, for the breach.
Davis and Wife can make a good and. valid title to one moiety of said lot, also to an estate for the life of the defendant, Peace, in the other moiety. They have the title in fee to the remainder interest in the last mentioned moiety; but the same is defeasible, at the election of the heirs of Mrs. Peace; and, therefore, Davis and Wife cannot make a good, indefeasible title to the whole of said lot, as they are bound by the terms of said agreement to do. The complainant is entitled to a conveyance from Davis and Wife, of such interest in' said lot as they can make a good title to, and to an account against them for the value of the estate in remainder, at the time they refused to make title, in compliance with the terms of said agreement.
The deed of Mrs. Peace, of the 15th September, ■1848, never having been disaffirmed by her, or her *455 heirs, the complainants in the cross hill are entitled to no relief against Peace, upon his warranty. They cannot disaffirm the deed; and, either by an affirmance, or the waiver of the right to disaffirm the deed to Mrs. Davis, her title to the remainder will become perfect and indefeasible.
We think the decree of the Chancellor is erroneous; it will be reversed, and the cause remanded to the Chancery Court at Lebanon, where the rights of the parties will be settled, according to the principles stated in this opinion; and for such further proceedings as may be necessary.